UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA LYNN WELLS,

                Plaintiff,

v.                                                    6:16-CV-0655
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LONGSTREET & BERRY, LLP              MARTHA L. BERRY, ESQ.
 Counsel for Plaintiff
P.O. Box 249
Fayetteville, NY 13066

U.S. SOCIAL SECURITY ADMIN.          GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Patricia Lynn Wells ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

    A.      Factual Background

Plaintiff was born in 1971, making her 40 years old at the date she filed her application and 42 years old at the date of the ALJ's decision. Plaintiff reported graduating high school and completing two years of college with training as a certified nursing assistant. Plaintiff has no past relevant work. Generally, Plaintiff alleges disability due to ovarian cancer, mental disorders, severe back pain, migraines, and asthma.

    B.      Procedural History

Plaintiff applied for Supplemental Security Income on April 12, 2012. Plaintiff's application was initially denied on August 8, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Roxanne Fuller on August 6, 2013. On September 6, 2013, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 9-19.)[1] On February 17, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

    C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 11-19.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application filing date. (*Id*.) Second, the ALJ found that Plaintiff's disorders of the spine, asthma, depression, anxiety, post-traumatic stress disorder, obsessive-

---

[1]     The Administrative Transcript is found at Dkt. No. 5. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

compulsive disorder, panic disorder with agoraphobia, and substance abuse are severe impairments. (T 11-12.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id*.) Specifically, the ALJ considered Listings 1.00 (musculoskeletal disorders), 3.00 (respiratory disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (personality disorders). Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 416.967(a) except occasional climb ramps, stairs, ladders, ropes, and scaffolds; occasional balance, stoop, crouch, kneel, crawl; occasional exposure to irritants, such as fumes, odors, dusts, and gases; occasional exposure to poorly ventilated areas; occasional exposure to chemicals; no exposure to moving mechanical parts; no operating a motor vehicle; no exposure to unprotected heights; able to perform simple routine repetitive tasks; no interaction with the public; occasional interaction with supervisors and coworkers.

(T. 13.) Fifth, the ALJ found that Plaintiff does not have any past relevant work. (T. 18.) Sixth, and last, the ALJ found Plaintiff remains able to perform other work in the national economy as a document preparer, bench hand, and final assembler and therefore is not disabled. (T. 18-19.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues error due to the fact that the ALJ was unable to ask Plaintiff questions regarding her pain management treatment while taking testimony at the hearing because those records were submitted during the hearing. (Dkt. No. 9, at 1 [Pl. Mem. of Law].) Second, Plaintiff argues that the evidence of the need for medication to manage psychiatric symptoms and resulting side effects of grogginess require further proceedings to determine

whether Plaintiff has the "physical and mental stamina to make it through a work day." (Dkt. No. 9, at 1-2 [Pl. Mem. of Law].)

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that it was Plaintiff's duty to submit all evidence she wanted to be considered at the hearing in a timely manner, and that her representative acknowledged and accepted the fact that the hearing would be conducted without the ALJ's review of the pain management records due to Plaintiff's late submission. (Dkt. No. 10, at 4-5 [Def. Mem. of Law].) Defendant also argues that Plaintiff's representative had the opportunity to question her regarding issues related to those pain management records, but declined to do so. (Dkt. No. 10, at 5 [Def. Mem. of Law].) Lastly, Defendant argues that the ALJ properly considered these records in combination with the rest of the evidence prior to rendering the decision regardless of whether he had reviewed them prior to the hearing, and so the decision itself was properly based on the totality of the evidence. (Dkt. No. 10, at 5-6 [Def. Mem. of Law].)

Second, Defendant argues that the ALJ afforded appropriate consideration to the Plaintiff's reports regarding her mental impairments, including assessing her mental impairment under the required regulatory technique, considering all the medical evidence, and conducting an assessment of the credibility of Plaintiff's allegations. (Dkt. No. 10, at 6-7 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether Plaintiff Was Afforded a Fair Hearing Despite the ALJ's Inability to Question Her About the Pain Management Records

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 4-6 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

"A claim of entitlement to social security benefits triggers Due Process Clause protections." *Pokluda v. Colvin*, No. 1:13-CV-0335, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976)). "In the context of an administrative social security hearing, however, Due Process requires only that the proceedings be 'full and fair.'" *Pokluda*, 2014 WL 1679801, at *3 (citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971)). Additionally, "administrative proceedings can and should be 'informal,' 'liberal,' and 'not strict in tone and operation,'" and "[t]heir overall conduct ultimately 'rests . . . in the examiner's discretion.'" *Id.* (quoting *Perales*, 402 U.S. at 400-01).

Plaintiff appears to argue that the hearing provided by the ALJ was insufficient because the ALJ conducted it without having the benefit of reviewing pain management records, which in turn prevented the ALJ from questioning Plaintiff about that pain management treatment. (Dkt. No. 9, at 1 [Pl. Mem. of Law].) However, Plaintiff's attempt to turn this fact into an error is not persuasive for a number of reasons.

First, Plaintiff's argument ignores the fact that it was due to the actions of her own representative that the pain management records were not submitted until the day of the hearing. By way of explanation for failure to submit these records sooner, Plaintiff's representative reported at the hearing that he had received the pain management records the day prior to the

7

hearing, and that the mental health records were for treatment that occurred only a week or two prior to the hearing. (T. 37-39.) However, Plaintiff's representative failed to explain why he did not submit these records through the electronic system prior to the hearing rather than bringing them to the hearing. (*Id*.) Additionally, as Defendant notes, Plaintiff's hearing representative indicated that he "can understand [] certainly" that the ALJ was having to conduct the hearing without the benefit of reviewing those records due to the timing of the submission, and the representative did not request a postponement of the hearing for the ALJ to consider these records prior to conducting questioning of Plaintiff. (T. 37-38; Dkt. No. 10, at 4-5 [Def. Mem. of Law].) To the extent that Plaintiff argues that the ALJ should be held responsible for when Plaintiff's representative chose to submit these records, or that the ALJ was required to postpone the hearing until he had considered these new records, Plaintiff's arguments are not persuasive or supported by any legal authority.

Second, as Defendant notes, the transcript of the hearing shows that, although the ALJ did not have the ability to review these records prior to the hearing, she did attempt to question Plaintiff somewhat related to the evidence submitted at the hearing, though her question focused on a statement from a mental treating source rather than the pain management treatment. (T. 47; Dkt. No. 10, at 5 [Def. Mem. of Law].) Additionally, as Defendant correctly points out, Plaintiff's hearing representative (who was presumably more familiar with the evidence he was submitting) was in the position to ask more specific questions about that evidence at the hearing if he believed such questioning was warranted, yet he declined the opportunity to do so. (T. 55-56; Dkt. No. 10, at 5 [Def. Mem. of Law].) Again, although the ALJ has a concurrent duty to ensure the record is fully developed, including eliciting relevant testimony at the hearing, Plaintiff still bears the ultimate burden of producing evidence to support her claim of disability.

*See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); citing *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)). If there was something so material in these records that failure to address it at the hearing would have rendered Plaintiff's hearing unfair or otherwise legally inadequate, Plaintiff's representative should have taken the provided opportunity at the hearing to address it, particularly as it was Plaintiff's representative who waited until the hearing to submit these records. Additionally, any concerns regarding the ALJ's inability to question Plaintiff specifically about these records are ameliorated by the fact that the ALJ appropriately considered all of the evidence when making the final determination, as will be discussed below.

Third, Plaintiff has not alleged how the inability to question Plaintiff specifically about these treatment notes in any way impacted the outcome of her case. The ALJ's discussion of the treatment and opinion evidence shows that she appropriately considered all the evidence submitted on the date of the hearing when making her determination. (T. 14-17.) Additionally, nothing in these treatment notes suggests that eliciting testimony would have been likely to result in a different outcome. The pain management records show that, on February 25, 2013, Sebastian Thomas, M.D., observed normal gait and station, normal head and neck findings, tenderness to palpation at the bilateral sacroiliac joints and L5/S1 lumbar spine vertebral bodies, pain the in sacroiliac joints with straight leg raising and in the right leg with FABER testing, weakness in both legs secondary to low back pain, intact sensation, intact judgment and insight, intact memory, and positive findings for anxiety. (T. 279.) On March 18, 2013, Dr. Thomas observed Plaintiff displayed tenderness to palpation along the sacroiliac joints and was alert and oriented but appeared very anxious while undergoing a sacroiliac joint injection. (T. 291.) On April 8, 2013, Plaintiff reported experiencing an 85 percent reduction of pain for three weeks due

9

to the injection, though she currently presented with bilateral sacroiliac joint tenderness and positive bilateral leg pain on FABER testing. (T. 291.) On May 28, 2013, Plaintiff was noted to have a normal mood and affect and normal behavior when undergoing a radiofrequency ablation of the right sacroiliac joint. (T. 299.) On June 25, 2013, Plaintiff reported significant improvement after the ablation, noting she was "extremely happy" with the results and that she could ambulate and continue performing her daily activities. (T. 307.) Syed Ali, M.D., observed that Plaintiff was oriented and alert, and had a normal mood and affect, normal behavior, and normal judgment and thought content. (T. 308.) On July 26, 2013, Plaintiff reported a 90 percent reduction of pain for two months following radiofrequency ablation; she noted it was returning slowly, but she still had a 30 to 40 percent reduction in pain at that time. (T. 312.) Dr. Thomas observed normal ranges of motion, normal pulmonary functioning, and that she was alert and oriented with normal mood, affect and behavior. (T. 312-13.)

The treatment notes from Plaintiff's pain management treatment therefore show that while Plaintiff experienced symptoms, she also experienced relief from her lumbar spine pain with treatment, first with sacroiliac injections and then more significantly with radiofrequency ablation of the sacroiliac joint. Plaintiff has not alleged a reason as to why she believes the ALJ's inability to ask questions regarding these records was detrimental to conducting a fair hearing or in any other way negatively impacted the ALJ's decision making. Additionally, this Court does not see any suggestion that questioning Plaintiff about her pain management treatment specifically would have been likely to result in any additional evidence that would have caused the ALJ to make different findings.

For all the above reasons, there was no error in the ALJ's decision to conduct the hearing without first considering the pain management records that were submitted at that time. Remand is not warranted on this basis.

### B. Whether the ALJ Conducted a Proper Assessment of Plaintiff's Credibility

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 6-7 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Although Plaintiff does not explicitly frame it as such, her argument that remand is warranted to determine whether Plaintiff has the "physical and mental stamina to make it through a work day" is essentially a challenge to the ALJ's credibility finding, as Plaintiff relies on her own reports of agoraphobia, panic attacks, and medication side effects as evidence of her level of limitations. (Dkt. No. 9, at 1-2 [Pl. Mem. of Law].) Rather than relying on Plaintiff's subjective reports, the ALJ found that her allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (T. 14.) In support of this finding, the ALJ cited to inconsistencies with the objective medical evidence, notations that medication and treatment were effective at controlling her symptoms, inconsistencies in her reports throughout the record about her history of substance abuse, reports of her daily activities, and a poor work history prior to the alleged onset date. (T. 14-16.)

Substantial evidence supports the ALJ's finding that Plaintiff's allegations were inconsistent with the evidence. Although the treatment evidence does show that Plaintiff experienced symptoms, it does not support the extent of limitations Plaintiff reported. The ALJ discussed the treatment evidence in detail in the written decision and provided explanations regarding what evidence she relied on in making her determination, as well as reasons for rejecting evidence that she did not find persuasive in light of all the evidence. (T. 14-18.) The ALJ's discussion of the evidence is sufficient to show that the extent of Plaintiff's allegations was inconsistent with the objective medical evidence.

The ALJ also noted that Plaintiff had made inconsistent statements to different sources regarding her history of substance abuse that called the credibility of her statements into

question. (T. 16.) A notable example of this is that she reported to Zachary Forbes, M.S.W., on January 17, 2012, that she "often drinks, consumes pills, and any substance she can get her hands on," while later reporting to the consultative examiner on July 10, 2012, that she did not have a history of drug or alcohol abuse. (T. 199, 227.) Inconsistencies in a claimant's statements are a proper consideration when conducting the credibility analysis. *See Taylor v. Colvin*, No. 3:14-CV-0928, 2016 WL 1049000, at *8 (N.D.N.Y. Mar. 11, 2016) (finding that the ALJ's citation to multiple inconsistencies in the plaintiff's statements were sufficient reason to uphold the credibility finding).

In terms of daily activities, the ALJ noted that Plaintiff testified she watched television, slept, performed light housekeeping, laundry and dishes, and left the house to grocery shop once per week. (T. 16.) At the consultative examination on July 10, 2012, Plaintiff reported she could dress, bathe and groom herself, cook, prepare food and clean when not in too much pain, do laundry, shop if someone was with her, manage money, go places in a car with a friend, read, watch television, and listen to music and the radio. (T. 229.) There was nothing unreasonable in the ALJ's interpretation that these reported activities contradicted Plaintiff's allegation that she was unable to perform even sedentary unskilled work. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.").

Lastly, the ALJ was permitted to consider Plaintiff's poor work history as one factor in the analysis when determining the issue of credibility. *See Stroud v. Comm'r of Soc. Sec.*, No.

13-CV-3251, 2014 WL 4652581, at *11 (S.D.N.Y. Sept. 8, 2014) ("'A claimant's unexplained poor work history may negatively impact on the claimant's credibility.'") (quoting *Marine v. Barnhart*, No. 00-CV-9392, 2003 WL 22434094, at *4 (S.D.N.Y. Oct. 24, 2003)); *Ellis v. Comm'r of Soc. Sec.*, No. 3:11-CV-1205, 2012 WL 5464632, at *12 (N.D.N.Y. Sept. 7, 2012) ("Although work history may be deemed probative of credibility, it is one of the many factors to be considered.") (citing *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011)).

AS detailed above, the ALJ provided multiple reasons for concluding Plaintiff's allegations were not entirely credible, and the credibility determination is therefore consistent with the applicable legal standards and supported by substantial evidence. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 11, 2017
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge